## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MICHAEL BROWN,

     Petitioner,

v.                                 Case No.: 4:17-cv-509-MW/MJF

MARK S. INCH,

     Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Michael Brown has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 21). Brown replied. (Doc. 41). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Brown is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background and Procedural History[2]

On July 31, 2011, the victim, Sergio Morales, was moving out of his townhome (the "Richmond Street home") in Tallahassee, Florida, to a new residence nearby. Morales's roommate, Jose Renda, was assisting Morales. The men were using their own private vehicles and not a rental truck.

After making several trips between the two residences, Morales and Renda took a break to visit their neighbor next door to the Richmond Street home. When Morales returned from the visit, he went to check his text messages on his iPhone 4 (which he had purchased new two months prior). Morales had placed his phone on top of his wallet on a counter inside the Richmond Street home, approximately 10-15 feet inside the front door. Morales's iPhone and wallet were gone.

Morales used a GPS app ("Find My Phone") on Renda's phone to track his missing iPhone. The Find My Phone app tracked Morales's phone to a location a couple of blocks away. Morales called 911 and, after waiting several minutes for an officer to respond, walked to the nearby Florida State University campus to locate a police officer. Morales and Renda made contact with TPD Officer Michael

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 21, Attachs. 1-2, Ex. C (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Petroczky. Renda gave his phone to Petroczky to assist him in tracking Morales's phone.

Officer Petroczky tracked Morales's phone to the stairwell of an apartment complex about 300 yards from where he was standing. Petroczky and TPD Officer Coney walked to a chain-link fence bordering the apartment complex, where they observed Brown on the other side of the fence, sitting in a stairwell in the apartment complex, manipulating a phone. Petroczky used the Find My Phone app on Renda's phone to activate an alarm on Morales's phone. When Petroczky pressed the activation button, the phone Brown was holding emitted a loud chime. Brown became frantic and attempted to disarm the alarm by pressing various buttons on the phone. Officer Coney continued to observe Brown through the fence, while Petroczky retrieved his patrol car and drove to Brown's location.

Coney observed Brown get up from the stairs with Morales's phone, walk to a nearby dumpster, smash the phone against the ground several times, place the smashed phone in the dumpster, and walk back to the stairs. Coney engaged Brown in conversation until Petroczky arrived.

Petroczky reached Brown just as Brown was removing his hand from the dumpster. Petroczky drew his Taser and ordered Brown to his knees. Brown went to his knees, but resisted being handcuffed. Officer Gary Roy arrived on scene and used a Taser to subdue Brown. After Brown was handcuffed and Mirandized, he admitted

to Roy that he took the iPhone, but claimed he found it on the bumper of a U-Haul parked on Richmond Street.

Petroczky retrieved the damaged iPhone from the dumpster. The phone was resting on top of all the other trash in the dumpster. Morales identified the damaged phone as his, and described it as "basically destroyed," incapable of repair, and "[n]ot at all" in the condition it was before Brown stole it. Morales and the police researched the price of a used iPhone 4, and determined that the price was approximately $500.00. Morales was able to purchase a new replacement iPhone 4 for $200.00 as part of a new service contract.

Brown was charged in Leon County Circuit Court Case No. 2011-CF-2407, with burglary of a dwelling, grand theft ($300 or more), tampering with physical evidence, and resisting an officer without violence. (Doc. 21, Ex. A at 7).[3] A jury found Brown guilty as charged. (Doc. 21, Attachs. 1-2, Exs. B, C (transcript of jury selection and trial); Attach. 1, Ex. A at 42-43 (verdict)). The trial court adjudicated Brown guilty and sentenced him as a prison releasee reoffender to 15 years of imprisonment for the burglary, concurrent terms of 5 years of imprisonment for the

---

[3] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 21). The citation refers to the electronic attachment number followed by the exhibit. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

grand theft and the evidence tampering (concurrent with the burglary sentence), and time served for resisting the officers. (Doc. 21, Attach. 1, Ex. A at 47-57 (judgment and sentence)). The Florida First District Court of Appeal ("First DCA") affirmed on July 16, 2014, *per curiam* and without written opinion. *Brown v. State*, 147 So. 3d 982 (Fla. 1st DCA 2014) (Table) (copy at Doc. 21, Attach. 3, Ex. J). The mandate issued August 12, 2014. (*Id*.).

On December 11, 2014, Brown filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging that its affirmance of his grand theft conviction was "call[ed] . . . into question" by *Covello v. State*, 154 So. 3d 401 (Fla. 4th DCA 2014). (Doc. 21, Attach. 3, Ex. K). The First DCA denied the petition on January 9, 2015. *Brown v. State*, 158 So. 3d 565 (Fla. 1st DCA 2015) (copy at Doc. 21, Attach. 3, Ex. L).

On December 10, 2014, Brown filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he twice amended. (Doc. 21, Attach. 4, Ex. M at 4-17 (original motion), Ex. M at 22-51 (amended Grounds One through Three and Five), Ex. M at 91-99 (amended Grounds Four and Six)). The state circuit court ordered an evidentiary hearing and appointed postconviction counsel to assist Brown. (Doc. 21, Attach. 4, Ex. M at 111-12).

Brown's postconviction evidentiary hearing was held on August 22, 2016. (Doc. 21, Attach. 4, Ex. M at 129-99 (evidentiary hearing transcript)). At the close

Page 5 of 49

of the hearing, the state court denied relief, explaining its reasons on the record. (*Id.* at 193-98). The circuit court's ruling was followed by a written order. (Doc. 21, Attach. 4, Ex. M at 120-21). The First DCA affirmed *per curiam* and without written opinion. *Brown v. State*, 227 So. 3d 567 (Fla. 1st DCA 2017) (Table) (copy at Doc. 21, Attach. 6, Ex. Q). The mandate issued July 12, 2017. (Doc. 21, Attach. 6, Ex. S). Brown filed a motion for rehearing on July 13, 2017, which the First DCA denied on August 14, 2017. (Doc. 21, Attach. 6, Ex. U).

Brown filed his *pro se* federal habeas petition on November 1, 2017, raising nine claims (Doc. 1). The State asserts that Brown is not entitled to habeas relief because one claim is procedurally defaulted and the remaining claims fail to meet § 2254(d)'s demanding standard. (Doc. 21). Brown replied, re-arguing the merits of his claims. (Doc. 41).

## II.    Relevant Legal Standards

### A.    Section 2254 Standard of Review

A federal court "shall not" grant habeas relief to a state prisoner on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v.*

*Taylor*, 529 U.S. 362 (2000).[4] In *Williams*, Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication of the federal claim is contrary to the clearly established Supreme Court case law. The adjudication is "contrary to" federal law only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination

"will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court*, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well*

> *understood and comprehended in existing law beyond any possibility*
> *for fairminded disagreement.*

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of the petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

### B.    Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances.") (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The *Strickland* standard also applies to a claim of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted). Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success on appeal. *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983) ("Experienced advocates since time beyond memory have emphasized the

importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, petitioner would have prevailed on appeal. *See Robbins*, 528 U.S. at 285. Moreover, the arguments omitted from the appeal must have been sufficiently significant to have affected the outcome of the appeal. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).

Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." *Id.* at 1344 (internal quotation marks and citation omitted). Additionally, when an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient because it is based on the reasonable conclusion that the appellate court would not address the unpreserved issue. *See Diaz v. Sec'y Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.    Discussion

**Ground One**          **"Direct Appeal: Issue I: The State courts wrongfully determined whether sufficient evidence of the market value of the stolen item existed to deny judgment of acquittal on the grand theft count." (Doc. 1 at 5)**

Brown challenges his grand theft conviction on the ground that the State failed to prove that the fair market value of Morales's iPhone 4 exceeded $300 at the time of the theft. (Doc. 1 at 5-8). The parties agree that Brown presented this claim to the state courts at trial and on direct appeal. (Doc. 1 at 5-8; Doc. 21 at 16-19). The State asserts that Brown is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 21 at 19-23).

The state court record confirms that Brown presented this claim to the trial court in a motion for judgment of acquittal. (Doc. 21, Attach. 2, Ex. C at 67-69). The trial court denied relief, explaining its reasons on the record. (*Id.* at 72-73). Brown appealed the ruling. (Doc. 21, Attach. 3, Ex. G). The First DCA summarily affirmed without explanation. (Doc. 21, Attach. 3, Ex. J).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

### A.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979). "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is

purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 324, n.16).

Under the federal standard, evidence is sufficient to support a conviction "if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson*, 566 U.S. at 654 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). By confining the court's review to that legal question, *Jackson*'s limited, deferential standard ensures that the court "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, — U.S. —, 136 S. Ct. 709, 715 (2016) (quoting *Jackson*, 443 U.S. at 319); *see also Johnson*, 566 U.S. at 655 (explaining that *Jackson*'s deferential standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring that jurors 'draw reasonable inferences from basic facts to ultimate facts.'") (quoting *Jackson*, 443 U.S. at 319).

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Johnson*, 566 U.S. at 651. First, on direct appeal, the reviewing state court "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id*. (internal quotation

marks and citation omitted). Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id*. (internal quotation marks and citation omitted).

### B.    Section 2254 Review of the State Court's Decision

In Florida, a conviction for third degree felony grand theft requires the State to prove beyond a reasonable doubt that the defendant stole property valued at $300 or more, but less than $5,000. Fla. Stat. § 812.014(2)(c)1 (2011). "Value means the market value of the property at the time and place of the offense or, if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense." Fla. Stat. § 812.012(10)(a)1 (2001). "Value may be established by direct testimony of fair market value. . . ." *Smith v. State*, 955 So. 2d 1227, 1228 (Fla. 5th DCA 2007); *Pickett v. State*, 839 So. 2d 860, 861 (Fla. 2d DCA 2003). "[A]n owner is generally presumed as competent to testify to the value of his stolen property." *Taylor v. State*, 425 So. 2d 1191, 1193 (Fla. 1st DCA 1983). "The apparent rationale for this rule is that an owner necessarily knows something about the quality, cost, and condition of his property." *Id*. Naturally, the owner "must be shown to have personal knowledge of the property." *Id*.

"Absent direct testimony of the market value of the property, proof may be established through the following factors: original market cost, manner in which the item has been used, its general condition and quality, and the percentage of depreciation since its purchase or construction." *Gilbert v. State*, 817 So. 2d 980, 982 (Fla. 4th DCA 2002) (citing *Negron v. State*, 306 So. 2d 104, 108 (Fla. 1974), *receded from on other grounds, Butterworth v. Fluellen*, 389 So. 2d 968 (Fla. 1980)); *see also Taylor*, 425 So. 2d at 1193.

The First DCA rejected Brown's insufficient evidence claim without explanation. Accordingly, this court looks through the unexplained decision to the state trial court's rationale and presumes that the First DCA rejected Brown's claim for the same reasons. *See Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

At the close of the State's case, defense counsel Lacey Kantor moved for a judgment of acquittal on the grand theft charge. Kantor argued that "we don't have any evidence of what the fair market value was at the time [of the offense] of a used phone." (Doc. 21, Attach. 2, Ex. C at 67-69).

The trial court denied relief for these reasons:

> Regarding the theft, the victim testified that the phone was worth $500. He did testify to how much his monthly contract was after that. I guess to get—the replacement value, I guess it could be argued, was the 200. But the value of the phone was the $500 that the victim testified to.

> And he had just purchased the phone about two months prior to this incident and then it totally didn't work afterward. So I'm going to deny the motion for JOA on the theft as well.

(Doc. 21, Attach. 2, Ex. C at 72-73).

This court defers to the state court's factual findings, because they are amply supported by the record and because Brown has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("[T]he AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

Based on the trial court's findings and the evidence presented at trial, fairminded jurists can concur in the state court's determination that, viewing the evidence in the light most favorable to the State, a rational juror could conclude beyond a reasonable doubt that the value of Morales's iPhone 4 was over $300 at the time Brown stole it. Morales testified that he researched the market value of his iPhone 4 on the day it was stolen, and the market value was $500. Morales also

Page 18 of 49

testified that his iPhone 4 was new when he bought it two months prior; that the market value at the time of purchase was $500, that he maintained the condition of the iPhone by keeping it in a protective case, and that the condition of his iPhone after it was retrieved from the dumpster (smashed and inoperable) was nothing like its condition before it was stolen. (Doc. 21, Attach. 1, Ex. C at 18-30).

As the State sufficiently proved that the value of the stolen iPhone was over $300, the state court's rejection of Brown's claim was not contrary to, and did not involve an unreasonable application of the *Jackson* standard. Nor was the decision based on an unreasonable determination of the facts. Brown is not entitled to federal habeas relief on Ground One.

<u>**Ground Two**</u>    **"State Habeas Corpus (Ineffective Assistance of Appellate Counsel):** *Ground One*: **An exception to the 'law of the case doctrine' should be applied due to the decision reached in Brown's original appeal and re-examined in light of** *Covello v. State*, **39 FLW D2172 (Fla. 4th DCA October 15, 2014)." (Doc. 1 at 8)**

Brown claims that the First DCA should have "re-examined" its rejection of his insufficient evidence claim on the grand theft charge (discussed above) in light of the Fourth DCA's decision in *Covello v. State*, 154 So. 3d 401 (Fla. 4th DCA 2014). (Doc. 1 at 8-9).

The parties agree that Brown presented this claim to the state courts in his habeas petition as an ineffective assistance of appellate counsel claim. (Doc. 1 at 8-

9; Doc. 21 at 23-24). The State asserts that Brown is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 21 at 24-28).

The state court record confirms that Brown presented this claim in his state habeas petition. (Doc. 21, Attach. 3, Ex. K). The First DCA denied the petition in a one sentence opinion: "The petition for writ of habeas corpus is denied." (Doc. 21, Attach. 3, Ex. L). The First DCA's summary decision is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

### A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of appellate counsel is the *Strickland* standard described above.

### B.    Section 2254 Review of State Court's Decision

Where, as here, "a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

In *Covello*, the Fourth DCA held that the evidence was insufficient to sustain

a conviction for grand theft ($300 or more) in these circumstances:

> The State failed to elicit sufficient testimony from the victim
> regarding the value of the items taken. For most of the items, the State
> failed to even elicit a fair market value, and where it did, the opinion
> was not supported with evidence establishing condition, quality, age, or
> depreciation of the items. The only stolen item for which the State
> established an adequate fair market value for [sic] was the cell phone,
> which the victim estimated had a fair market value of $200. The
> establishment of the $200 value of the phone is not enough to prove
> that the value of the items taken was greater than $300.

*Covello*, 154 So. 3d at 408. The *Covello* decision issued after Brown's direct appeal

became final.

One theory that reasonably could have supported the First DCA's decision

that appellate counsel was not ineffective for failing to argue *Covello*, is that the

*Covello* opinion did not exist at the time of Brown's direct appeal. *See Jackson v.

Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds

set by *Strickland*, an attorney need not anticipate changes in the law."); *Spaziano v.

Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("[W]e have held many times that

reasonably effective representation cannot and does not include a requirement to

make arguments based on predictions of how the law may develop.") (quotations

and alterations omitted).

Another theory that reasonably could have supported the First DCA's decision

is that *Covello* is distinguishable on its facts. Unlike the victim in *Covello*, Mr.

Morales testified that the market value of his iPhone 4 was $500 at the time it was stolen, and Morales supported his opinion with testimony about the age, quality and condition of his iPhone.

A third theory that reasonably could have supported the First DCA's decision is that *Covello* was a decision by a different state appellate court (the Fourth District Court of Appeal) and, therefore, was not binding precedent in the First District. *See Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992) ("As between District Courts of Appeal, a sister district's opinion is merely persuasive.").

Because it is not clear that the First DCA erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision, Brown is not entitled to federal habeas relief on Ground Two.

| | |
|---|---|
| **Ground Three** | **"Amended Motion for Post-conviction Relief Motion, Rule 3.850: Claim One: For the offense of burglary of a dwelling, trial counsel was ineffective for failing to ask for the simple burglary instruction, which is a necessary lesser-included offense being one step removed." (Doc. 1 at 10)** |

Brown claims that trial counsel was ineffective for failing to request a jury instruction on the necessarily lesser-included offense of "simple burglary", *i.e.*, burglary of a structure.[5] Brown claims that requesting the instruction would have

---

[5] The parties and the court clarified at Brown's postconviction evidentiary hearing that Brown's reference to "simple burglary" was to the lesser included offense of burglary of a structure. (Doc. 21, Attach. 4, Ex. M at 133-34).

limited his sentence exposure because burglary of an unoccupied structure is not a PRR-qualifying offense. (Doc. 1 at 10 (citing Fla. Stat. § 775.082(9)(a)1)). Brown contends that "it made no difference that the evidence at trial also established the charged offense of burglary of a dwelling." (*Id*.).

The parties agree that Brown presented this claim to the state courts as Ground One of his amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order, and that the First DCA summarily affirmed without explanation. (Doc. 1 at 10; Doc. 21 at 29-31). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

## A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

## B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192. The state circuit court held an evidentiary hearing on this claim, where Brown was represented by counsel. Brown and his former trial counsel, Attorney Kantor, testified at the hearing. The circuit court denied relief as follows:

I'm going to find that the defendant has failed to meet his burden on each of the six counts for the following reasons. I'm just going to go through some findings, and then I'll follow it up with just a relatively short written order.

So on Count I, failure to request permissive lessers, the defendant admitted today that it wouldn't have changed the defense at all in the case. Ms. Kantor –

. . . .

So Ms. Kantor testified that there was no reason to request the lesser today. And then also during the trial on Page 75 of the record, Ms. Kantor stated that it's part of her theory of her defense to not request the lesser, and, therefore, it was a strategy decision –

. . . .

I believe that this is actually an attorney decision, but I did –

. . . .

I did actually inquire of the defendant during the trial, and I won't go over that again because Mr. Shippy [Brown's postconviction counsel] just read the complete thing into the record. But instead of—I feel like I phrased it in kind of layman's terms using the phrase "all or nothing" as opposed to lessers just to make sure that he totally understood that. I gave him some additional time to discuss that with Ms. Kantor, and he confirmed that that's what he wanted to do. So I think—even though I think that is an attorney decision, I feel like he made it clear on the record that he understood what that was and was in agreement with that attorney decision.

(Doc. 21, Attach. 4, Ex. M at 193-94). After denying relief on Brown's remaining claims, the court added:

And then just generally I just wanted to mention that the defendant testified at the end of the trial on Page 116 of the transcript

Page 24 of 49

that he was satisfied with Ms. Kantor's representation, and Ms. Kantor testified today that she had been a lawyer for about four and a half years when this case was tried and had tried approximately 50 cases before this one.

So like I said, I'll follow that up with a written order.

(Doc. 21 Attach. 4, Ex. M at 198).

The following day, the circuit court entered its written order. (Doc. 21, Attach. 4, Ex. M at 120-21). The order correctly identified *Strickland* as the controlling legal standard (*Id*. at 121), and rejected all of Brown's claims because "for the reasons stated on the record," Brown "failed to demonstrate both deficient performance by trial counsel and prejudice on each of the six counts." (*Id*. at 121). The First DCA summarily affirmed. (Doc. 21, Attach. 6, Ex. Q).

The circuit court's order relied on a number of factual findings. This court defers to those findings because they are amply supported by the record and because Brown has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845. This deference extends to the state court's determination that Attorney Kantor's testimony was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has

been observed by the state trial court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Based on the facts as found by the state court, fairminded jurists can concur in the state court's conclusion that Attorney Kantor's decision to forego an instruction on burglary of a structure was neither unreasonable nor prejudicial. The record confirms that Brown's asserted defense was that he found Morales's iPhone lying on or near the bumper of a U-Haul truck, not that he found it in a "structure." (Doc. 21, Attach. 1, Ex. C (defense counsel's opening statement explaining Brown's defense); Attach. 4, Ex. M at 157 (Brown's description, at the postconviction evidentiary hearing, of his theory of the defense); Ex. M at 154 (defense counsel's description, at the postconviction evidentiary hearing, of the defense theory)). Brown's guilt did not turn on the *character* of the Richmond Street home (i.e., whether it was a "dwelling" or a "structure"), it turned on whether Brown entered it at all.

When the trial court reviewed the jury instructions with the parties, the court announced its intent to "include[ ] the two Category 1 lessers of burglary of a structure and the second degree misdemeanor of trespass." (Doc. 21, Attach. 2, Ex. C at 75). Kantor advised the court that, based on the defense strategy, she preferred that the instructions on the lessers not be included. The trial court confirmed with Brown that he concurred in Kantor's decision:

Mr. Brown, let me just ask you a couple questions about not including any lesser included offenses on Count I. I just want to make sure that you understand that you guys are kind of doing an all or nothing on Count I, and that the jury will not be given the option of finding you guilty of the lesser offenses of burglary of a structure or trespass. Do you understand that?

THE DEFENDANT:  (Nods affirmatively.)

THE COURT:  Can you answer out loud?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And is that what you want to do?

(Defendant confers with counsel.)

THE DEFENDANT: Okay. I'm sorry, ma'am. Yes, ma'am.

THE COURT:  Okay. So that's how you want to proceed, Mr. Brown?

THE DEFENDANT:  Yes, ma'am.

(Doc. 21, Attach. 2, Ex. C at 80-81).

During the postconviction evidentiary hearing, Brown admitted that he authorized the removal of the jury instructions on the necessarily lesser included offenses, and that he personally waived those instructions. (Doc. 21, Attach. 4, Ex. M at 134-36, 156-57). Brown also admitted that his defense was that he "never went inside anyone's house to take no phone," and that he "found it out in the parking lot behind the bumper of a U-Haul." (*Id.* at 157). Brown also admitted that he would have asserted his defense—that he found the phone on or near the bumper of a U-

Page 27 of 49

Haul truck—regardless of whether the court had instructed the jury on lesser included offenses. (*Id*.).

Defense counsel Kantor testified that she made the strategic decision not to have the jury instructed on the lesser-included offense of burglary of a structure, because there was no reason to include the instruction:

> I really didn't see any need to [include the instruction]. I know different defense attorneys have different beliefs on lessers. Some ask for everything they can. Some ask for none. I believed it was either – they were going to find him guilty of a dwelling, or they were going to find him not guilty. It was either an apartment that was entered into or an apartment was not entered into. There was no allegation that it was a structure. So I didn't think it—and as he stated when he was questioned, it wouldn't have changed the defense if we had asked for anything lesser.

(Doc. 21, Attach. 4, Ex. M at 164).

Given all of this evidence, it was reasonable for the state court to conclude that Brown failed to satisfy *Strickland*'s performance prong, because: (1) the decision to forego an instruction on the lesser offense of burglary of a structure was as much Brown's decision as it was Kantor's, and (2) Kantor's strategic decision was reasonable given the defense strategy. *See Druery v. Thaler*, 647 F.3d 535, 540 (5th Cir. 2011) (holding that counsel did not err by foregoing a lesser included offense instruction where counsel "articulated a valid strategic reason for declining the instruction"); *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985) (holding that the Sixth Amendment does not require a defense counsel to request a lesser

included offense instruction when it would be inconsistent with or contrary to a defendant's trial theory). It also was reasonable to conclude that Brown failed to satisfy *Strickland*'s prejudice prong, because there is no reasonable probability that the jury's verdict would have been different had the instruction on burglary of a structure been given. There was no dispute that the Richmond Street home was a dwelling and, as Brown now concedes, "the evidence at trial . . . established the charged offense of burglary of a dwelling." (Doc. 1 at 10). Brown is not entitled to federal habeas relief on Ground Three.

**Ground Four**    **"Amended Motion for Post-conviction Relief Motion, Rule 3.850: Claim Two: Trial counsel failed to make an argument for the charge of burglary of a dwelling." (Doc. 1 at 12)**

Brown claims that trial counsel was ineffective for failing to move for a judgment of acquittal on the burglary charge on the ground that there was no evidence he obtained Morales's cell phone by entering the Richmond Street home. (Doc. 1 at 12).

The parties agree that Brown presented this claim to the state courts as Ground Two of his amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 12; Doc. 21 at 32-35). The First DCA's summary affirmance

is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

### A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

### B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court presumes that the First DCA denied relief for the reasons articulated by the circuit court. *Wilson*, 138 S. Ct. at 1192. The state circuit court held an evidentiary hearing on this claim and denied relief for these reasons:

> And then on Count II, Ms. Kantor testified that she didn't believe there was a good faith basis to move for judgment of [a]cquittal based on the victim's testimony and the instruction on possession of recently stolen property. I'm going to find that that's—making that choice is not deficient performance and that there was no prejudice in this case. She testified—and I agree—that the issue was one of credibility and not whether there was a prima facie case presented.

(Doc. 21, Attach. 4, Ex. M at 194-95). This oral ruling was followed by the written order articulating the *Strickland* standard and concluding that Brown failed to satisfy that standard. (Doc. 21, Attach. 4, Ex. M at 120-21).

Brown argues that the state court's decision was unreasonable because "the State was unable to produce any witnesses to place Brown inside or around the victim's apartment," and "the State's theory that Brown stole the iPhone out of the

victim's apartment is countered by the defendant's theory of defense that he found the iPhone on the back of a U-Haul bumper." (Doc. 1 at 12-13). Brown misunderstands the scope of a motion for judgment of acquittal. As the Supreme Court of Florida explained in *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974):

> A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.

*Id*. at 45 (citations omitted).

As the state court reasonably concluded, the testimony about the circumstances of the burglary and Brown's possession of the purloined iPhone was sufficient to withstand a motion for judgment of acquittal. *See* Fla. Stat. § 810.02 (burglary statute). The fact that different conclusions could be drawn from the evidence supports, rather than undermines, counsel's decision not to argue for a judgment of acquittal.

Because counsel cannot be ineffective for failing to perform a futile act, the state court reasonably rejected Brown's ineffective assistance claim. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Brown is not entitled to federal habeas relief on Ground Four.

> **Ground Five**         **"Amended Motion for Post-conviction Relief Motion, Rule 3.850: Claim Three: Trial counsel violated the Sixth and Fourteenth Amendments when she advised Petitioner not to testify at trial which was unreasonable advice where only Petitioner could supply testimony supporting his defense." (Doc. 1 at 13)**

Brown claims that trial counsel was ineffective for "misadvi[sing] him not to testify at trial." (Doc. 1 at 13). Brown describes counsel's alleged misadvice as "telling him the jury would know of the nature of his prior felony convictions were he to testify." (*Id.*). Brown concedes that he had twelve prior felony convictions and that five of those convictions were burglaries. (*Id.*). Brown argues, correctly, that the jury would not have known the specific nature of his prior felony convictions "as long as he answered truthfully regarding exactly how many prior felonies he had." (*Id.* at 13-14).

The parties agree that Brown presented this claim to the state courts as Ground Three of his amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 13; Doc. 21 at 35-38). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

## A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

## B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court presumes that the First DCA rejected this claim for the same reasons as the circuit court. *Wilson*, 138 S. Ct. at 1192. The state circuit court denied relief for these reasons:

> And on Count III, Ms. Kantor testified—and I agree—that since the defendant's statement was admitted via law enforcement and I believe it was consistent with what the defendant testified to today—I want to give a cite to the record on that. It was the last law enforcement officer that testified. And honestly I think in—

> MR. SHIPPY [Brown's Postconviction Counsel]:  Your Honor, there was an Officer Gray (sic) beginning at—his testimony begins at Page 60. Reference to what Mr. Brown told him begins on Page 64.

> THE COURT:  Okay. Thanks.

And honestly I think in some cases this might have drawn an objection from the State of self-serving hearsay, but for whatever reason, Ms. Frazier [the prosecutor] presented the testimony of what are exculpatory statements by Mr. Brown or an explanation of how he got the phone. And he does talk about on Page 64 looking through trash piles and whatnot as he walked down the street, as he mentioned today, and then seeing the phone on the back of the U-Haul.

MR. SHIPPY:  I think I said Officer Ray. It should be Officer Roy.

THE COURT:  Roy. Yes—R—

MR. SHIPPY:  If I misstated that.

THE COURT:  —O-Y. Officer Roy.

. . . .

And I also wanted to mention that I colloquied the defendant, as I usually do, on Pages 73 and 74 of the record. And how I like to do it and how I did it in this case is I make sure the defendant understands that it's his decision; that his lawyer's advice is important, but that in the end, it's his or her decision to make. And then after a break, I'll ask them what their decision is and give them an opportunity to ask any follow-up questions, and that's what I did in this case as reflected in the record on Pages 73 and 74.

And then as far as the prior convictions, Ms. Kantor testified there's no way she would have told the defendant that the jury would have learned the nature of the convictions because she wouldn't have advised him of an incorrect law.

Ms. Kantor also testified today that she doesn't believe it would have—him testifying would have had any effect, and, of course, the jury did not learn about his convictions because he did not testify. So I'm going to find that there was no deficient performance and no prejudice.

Page 34 of 49

(Doc. 21, Attach. 4, Ex. M at 195-97). This oral ruling was followed by the written order articulating the *Strickland* standard and concluding that Brown failed to satisfy that standard. (Doc. 21, Attach. 4, Ex. M at 120-21).

This court defers to the state court's factual findings, including its determination that Attorney Kantor's testimony was credible. *See Consalvo*, 664 F.3d at 845. Based on these findings, fairminded jurists can concur in the state court's conclusion that (1) Brown personally made the decision not to testify; (2) Brown's decision was not based on incorrect advice by Kantor concerning the scope of questioning about his prior convictions; and (3) there is no reasonable probability the result of Brown's trial would have been different had he testified, because the jury already heard his version of events through Officer Roy's testimony. (Doc. 21, Attach. 4, Ex. M at 147-48 (Brown's description of his proposed trial testimony); Attach. 2, Ex. C at 64 (Officer Roy's description of Brown's exculpatory statements)).

The state court's rejection of Brown's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Brown is not entitled to federal habeas relief on Ground Five.

**Ground Six**   **"Second Amended Motion for Post-conviction Relief Motion, Rule 3.850: Claim Four: Trial counsel was ineffective when she failed to object to the procedure that the state used when qualifying defendant as a Prison Releasee Reoffender (PRR)." (Doc. 1 at 15)**

Brown's next claim relates to trial counsel's performance during sentencing. At Brown's sentencing hearing, the State called Thomas Balboni, a latent fingerprint expert. Balboni identified Brown as the person he fingerprinted in court on April 12, 2012. Balboni also identified fingerprints contained in a Florida Department of Corrections Penitentiary Packet ("Pen Pack") as Brown's prints. The Pen Pack was admitted into evidence without objection as State's Exhibit 6. (Doc. 21, Attach. 2, Ex. C at 123-28 (Balboni's testimony) & Attach. 5, Ex. N at 132-49 in ECF (Pen Pack)). The Pen Pack established that Brown was released from the Florida Department of Corrections on August 30, 2010, following his incarceration for five felonies that each carried a 5-year prison sentence. (*Id*.). Based on these facts, the trial court designated Brown a "prison releasee reoffender" under Section 775.082(9)(a)1, Florida Statutes (2011), and sentenced him to a mandatory-minimum term of imprisonment for the burglary.[6] Brown claims that trial counsel

---

[6] A "prison releasee reoffender" is a defendant who commits one of the felonies listed in the statute (including burglary of a dwelling), within 3 years after being released from incarceration in a correctional facility for an offense punishable by more than 1 year of imprisonment. *See* Fla. Stat. § 775.082(9)(a)1 (2011).

should have objected to admission of the Pen Pack because "[n]o live witness authenticated these records." (Doc. 1 at 15 & n.4).

The parties agree that Brown presented this claim to the state courts as Ground Four of his second amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 15; Doc. 21 at 39-42). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

## A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

## B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court presumes that the First DCA adopted the circuit court's reasoning for denying Brown's claim. *Wilson*, 138 S. Ct. at 1192. The state circuit court held an evidentiary hearing and denied relief for these reasons:

> And then on Count IV, the PRR issue, Ms. Kantor testified that she believed State's [Exhibit] 6 was the standard Pen Pack or penitentiary packet that's frequently introduced in these PRR cases as a self-authenticating document. There's no evidence that it was something that was printed off the Internet other than that was the defendant's recollection, but I'm going to find that that's not credible and that there certainly is no prejudice. He admits that he was released about a year before the offense date in this case.

(Doc. 21, Attach. 4, Ex. M at 197). The court's oral ruling was followed by the written order articulating the *Strickland* standard and concluding that Brown failed to satisfy that standard. (Doc. 21, Attach. 4, Ex. M at 120-21).

This court defers to the state court's factual findings and its state-law based legal conclusion that the Pen Pack was self-authenticating and therefore admissible without the testimony of the records custodian. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that when the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law").

In Florida, properly certified official public records and business records are self-authenticating and therefore admissible without extrinsic evidence of their authenticity. *See* Fla. Stat. § 90.902 (providing that a properly certified public record or business record is self-authenticating and thereby exempt from the requirement that it be authenticated by extrinsic evidence as a condition precedent to its admissibility); *see also* Charles W. Ehrhardt, *Florida Evidence* § 902.5, at 945 (2004 ed.) (explaining that to be self-authenticating under section 90.902(4), "the custodian of the document, or other person authorized by statute to make a certification, must

certify that the copy is correct and that the person has custody of the original. . . .
The custodian's signature must follow the statement.").

The Pen Pack in Brown's case (State's Exhibit 6) is part of the supplemental
record in Brown's postconviction appeal. The Pen Pack contains a certification with
the signature of the Florida Department of Corrections' records custodian stating
that the documents contained in the Pen Pack are true and correct copies of the
documents as they appear in the official records of the Florida Department of
Corrections. (Doc. 21, Attach. 5, Ex. N at 132-49 in ECF). The Pen Pack, therefore,
was admissible as self-authenticating. *Compare Christie v. State*, 951 So. 2d 1029
(Fla. 4th DCA 2007) (holding that a <u>certified</u> "Crime and Time Report" from the
Department of Corrections, containing a certification with a signature stating that
the document was a true and correct copy of the document as it appeared in the
official records of the FDC, was admissible as a self-authenticating official public
record and, thus, could serve as the basis for sentencing the defendant as a prison
releasee reoffender), *with Whitley v. State*, 1 So. 3d 414 (Fla. 1st DCA 2009)
(holding that an <u>uncertified</u> printout from the Florida Department of Corrections
website was not self-authenticating and was inadmissible without the testimony of a
records custodian or other qualified witness).

Because Brown's proposed objection to the Pen Pack was meritless, counsel
was not ineffective for failing to make the objection. *Meders v. Warden, Ga.*

*Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that the petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile).

The state court's rejection of Brown's claim was consistent with *Strickland* and was based on a reasonable determination of the facts. Brown is not entitled to federal habeas relief on Ground Six.

| | |
|---|---|
| **Ground Seven** | **"Amended Motion for Post-conviction Relief Motion, Rule 3.850: Claim Five: Trial counsel failed to properly argue during the judgment of acquittal argument the cost of the I-Phone was insufficient to prove the value of the property is over $300." (Doc. 1 at 16)** |

Brown claims that trial counsel was ineffective for failing to argue, in moving for a judgment of acquittal on the grand theft charge, that the State failed to prove that the value of Morales's iPhone exceeded $300 at the time it was stolen. (Doc. 41 at 26-27).

The parties agree that Brown presented this claim to the state courts as Ground Five of his amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 17; Doc. 21 at 42-47). The First DCA's summary affirmance

is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

### A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

### B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192. The state circuit court held an evidentiary hearing on this claim and denied relief for these reasons:

> And then failure to move for the JOA on the grand theft, there certainly wasn't deficient performance because Ms. Kantor did argue for the Judgment of Acquittal on that count. She [Attorney Kantor] argued that on Pages 67 through 69 of the record and then also on appeal in which the judgment and sentence was PCA'd.

(Doc. 21, Attach. 4, Ex. M at 197). This oral ruling was followed by the written order articulating the *Strickland* standard and concluding that Brown failed to satisfy that standard. (Doc. 21, Attach. 4, Ex. M at 120-21).

The state court's factual finding—that defense counsel made the very argument Brown claims she failed to make—is amply supported by the trial

transcript. In moving for a judgment of acquittal on the grand theft charge, Attorney

Kantor summarized:

> Your Honor, we don't have any evidence what the fair market value was at the time [of the theft] of a used phone. We have testimony from Mr. Morales that he purchased the phone initially for $200, and that the replacement was also $200. I think he initially said a brand new phone might have the value of 500, but this phone was not brand new, Your Honor.

(Doc. 21, Attach. 2, Ex. C at 68). Kantor argued the issue at length, and supported

her argument with case law. (Doc. 21, Attach. 2, Ex. C at 67-69). Brown's appellate

counsel argued the same issue on direct appeal, and the First DCA rejected the claim

on the merits. (*See* discussion *supra*, Ground One). Because trial counsel made the

very argument Brown contends she should have made, he cannot establish deficient

performance or prejudice under *Strickland*. Brown is not entitled to federal habeas

relief on Ground Seven.

| | |
|---|---|
| <u>**Ground Eight**</u> | <u>**"Second Amended Motion for Post-conviction Relief Motion, Rule 3.850: Claim Six: Trial counsel failed to argue that the demonstrative map should have been rendered admissible and that it was not submitted into evidence even though it was shown to the jury demonstrating where the defendant in possession of the i-Phone when he was located by the police." (Doc. 1 at 17)**</u> |

This claim involves a map the State used as a demonstrative aid during Officer

Petroczky's testimony. Petroczky used the map to help the jury visualize his location

when he made contact with Morales, his route as he tracked Morales's iPhone,

Brown's location when Petroczky observed him with Morales's phone, the location of Petroczky's patrol car, the route Petroczky drove to reach Brown's location, and Brown's location when Petroczky observed him discarding the phone into the dumpster. (Doc. 21, Attach. 1, Ex. C at 34-37 (Petroczky' s trial testimony)). Brown claims that trial counsel was ineffective for failing to object to Petroczky's use of the map because: (1) the map was not admitted into evidence; and (2) the State failed to establish the accuracy, scale, and authenticity of the map. (Doc. 1 at 16-17). Brown asserts that had trial counsel objected, Petroczky would not have used the map, and trial counsel could have impeached Petroczky's and Coney's testimony "as to the distances and timeframes that were testified to." (*Id*. at 17).

The parties agree that Brown presented this claim to the state courts as Ground Six of his second amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 17; Doc. 21 at 48-51). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

## A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of trial counsel is the *Strickland* standard described above.

### B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court presumes that the First DCA rejected

Brown's claim for the same reasons as the circuit court. *Wilson*, 138 S. Ct. at 1192.

The state circuit court held an evidentiary hearing and denied relief for these reasons:

> And then finally the  map. There's absolutely no legal basis to
> object to the map that was used as a demonstrative aid. Additionally,
> Ms. Kantor did her own independent research to make sure that it was
> generally accurate, which it was. The defendant today admitted it was
> three blocks away; so very short distance. So there's no deficient
> performance or prejudice on that count or any of the counts.

(Doc. 21, Attach. 4, Ex. M at 197-98). This oral ruling was followed by the written

order articulating the *Strickland* standard and concluding that Brown failed to satisfy

that standard. (Doc. 21, Attach. 4, Ex. M at 120-21).

Under Florida law, "the use of demonstrative devices to aid the jury's

comprehension is well within the court's discretion." *Lowe v. State*, 259 So. 3d 23,

40 (Fla. 2018) (internal quotations omitted). "Demonstrative aids may be used when

they are 'relevant to the issues in the case' and 'constitute an accurate and reasonable

reproduction of the object involved.'" *Id*. (quoting *Brown v. State*, 550 So. 2d 527,

528 (Fla. 1st DCA 1989)).

This court defers to the state court's factual findings, including its

determination that Attorney Kantor's testimony was credible. *See Consalvo*, 664

F.3d at 845. Kantor testified that the map was an aerial view of the relevant locations;

that the State disclosed the map prior to trial; that Kantor verified that the map was accurate; and that moving the map into evidence would have hurt, not helped, Brown's case. (Doc. 21, Attach. 4, Ex. M at 169-70, 179-80). In light of these facts, and the state court's state-law determination that Brown proffered no viable legal basis to preclude using the map as a demonstrative aid, it was reasonable for the state court to conclude that Brown failed to establish deficient performance and prejudice under *Strickland*. *See Meders*, 911 F.3d at 1354; *Green*, 882 F.3d at 987. Brown is not entitled to federal habeas relief on Ground Eight.

### Ground Nine    **"Amended Motion for Post-conviction Relief Motion, Rule 3.850: State Created Procedure—Due Process Violation." (Doc. 1 at 18)**

Brown's final claim challenges the process that the First DCA afforded him during his postconviction appeal. Brown alleges that the First DCA issued its opinion in his postconviction appeal on June 15, 2017; that he had until June 30, 2017, to file a motion for rehearing; that on June 28, 2017, he mailed a motion for extension of time to file his motion for rehearing; that the First DCA denied his motion for an extension on July 11, 2017; and that the First DCA issued its mandate on July 12, 2017. (Doc. 1 at 19). Brown argues that because he timely moved for an extension of time, the First DCA should have recalled its mandate and granted him an extension. (*Id*.). Brown claims that the First DCA's failure to recall its mandate deprived him of "the proper procedural due process of law." (*Id*.).

The State asserts that this claim is procedurally defaulted because Brown never presented it to the state courts. The State argues that Brown cannot obtain federal review through the "cause and prejudice" exception, because his argument is without merit. (Doc. 21 at 51-55).

This court need not decide the procedural default issue, because Brown fails to state a claim on which federal habeas relief may be granted. Brown challenges the process afforded him in his state postconviction proceeding. A prisoner's challenge to the process afforded him in a state postconviction proceeding is not a cognizable claim for federal habeas relief because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to state postconviction proceeding—the state court's ruling that petitioner waived his state collateral proceedings—was not cognizable on federal habeas review). The Eleventh Circuit explained in *Alston*:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, – U.S. –, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – *i.e.*, the conviction itself – and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365. Furthermore, such challenges often involve issues of state law, and "[a] state's

> interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

*Id.* at 1325-26; *see also, e.g., Carroll*, 574 F.3d at 1365-66 (holding that habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing—did not state a claim on which federal habeas relief could be granted). Defects "in state collateral proceedings do not provide a basis for habeas relief." *Carroll*, 574 F.3d at 1366 (citing *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006); *Quince*, 360 F.3d at 1262; *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)).

Eleventh Circuit precedent, therefore, forecloses Brown's challenge to the state postconviction appellate court's alleged failure to extend the time to move for rehearing. Brown is not entitled to federal habeas relief on Ground Nine.

## IV. Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation

by either party, that party may bring such argument to the attention of the district

judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment

of conviction and sentence in *State of Florida v. Michael R. Brown*, Leon

County Circuit Court Case No. 2011-CF-2407, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>16th</u>  day of December, 2019.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**